IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

COMMUNITY STATE BANK;                    )
COMPUCREDIT CORPORATION;                 )
VALUED SERVICES ACQUISITIONS             )
COMPANY, LLC; VALUED SERVICES,           )
LLC; VALUED SERVICES OF NORTH            )
CAROLINA, LLC; VALUED SERVICES           )
FINANCIAL HOLDINGS, LLC; VALUED          )
SERVICES HOLDINGS, LLC; FORESIGHT        )
MANAGEMENT COMPANY, LLC;                 )
FIRST AMERICAN HOLDINGS, LLC;            )
FIRST AMERICAN MANAGEMENT, INC.;         )
LARRY A. KUGLER; JAMES E. SCOGGINS;      )
and ROBERT P. MANNING,                   )
                                         )
               Petitioners,              )
                                         )
       v.                                )        1:05CV00226
                                         )
TOMMY KNOX; VELMA KNOX; and              )
KERRY GORDON,                            )
                                         )
               Respondents.              )

ORDER AND MEMORANDUM OPINION

BEATY, Chief Judge.

       This case is before the Court on an Amended Petition to Compel Arbitration and Stay

Judicial Proceedings [Doc. #47] pursuant to Sections 3 and 4 of the Federal Arbitration Act

("FAA"), 9 U.S.C. §§ 3 and 4, seeking to compel arbitration of a dispute involving "payday

lending" claims.  Respondents have filed a Motion to Dismiss [Doc. #50] contending that this

action should be dismissed.

I.     FACTUAL AND PROCEDURAL HISTORY

       The Respondents in this case, Tommy Knox, Velma Knox, and Kerry Gordon

("Respondents") are individuals who obtained short-term loans, often referred to as "payday loans," from storefronts in North Carolina operating under the name First American Cash Advance. The Petitioners in this case are various entities operating or affiliated with the First American Cash Advance stores[1] (collectively, the "First American Cash Petitioners"), as well as Community State Bank, a South Dakota state-chartered, federally insured bank that contends it was the "true lender" on the payday loans at issue. The Petitioners filed the present case seeking to require the Respondents to arbitrate any disputes they have with any of the Petitioners related to the payday loans. The Petitioners specifically seek to require arbitration of the claims asserted in a pending state court case that the Respondents previously filed against the First American Cash Petitioners. The Petitioners contend that this Court has jurisdiction over the Petition because it involves potential claims against an out-of-state, federally insured bank, and that all claims against such an entity are completely preempted by the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, which governs usury claims asserted against state-chartered banks like Community State Bank. However, Respondents contend that they have disclaimed any claims against Community State Bank, and that they have asserted only state law claims against the First American Cash Petitioners as part of the pending state court case.

---

[1] Specifically, the First American Cash Petitioners are Foresight Management Company, LLC ("Foresight"), a Tennessee limited liability company, (2) Valued Services of North Carolina, LLC ("Valued Services-NC"), a Georgia limited liability company that was the successor to Foresight, (3) VS of North Carolina, LLC ("VS-NC"), a Georgia limited liability company that was the successor to Valued Services-NC, (4) CompuCredit Corporation ("CompuCredit"), a Georgia corporation affiliated with VS-NC and (5) Valued Services, LLC, a Georgia limited liability company also affiliated with VS-NC. Foresight did business as "First Southern Cash Advance" and "First American Cash Advance." Foresight's successors, Valued Services-NC and VS-NC, also did business as "First American Cash Advance."

2

The pending state court case at issue is <u>Knox v. First Southern Cash Advance</u>, No. 05-CVS-0445 (New Hanover County, filed Feb. 8, 2005) (the "Knox Case"). Tommy Knox, Velma Knox, and Kerry Gordon are the Plaintiffs in the Knox Case. In the Knox Case, the Knox Plaintiffs allege that the fees charged on loans that they obtained at First American Cash Advance stores exceed what is permitted under North Carolina law, that the lenders lacked the licenses required to issue the loans, and that aspects of the loan process violated North Carolina law.[2] According to the complaint filed in the Knox Case, the "payday lending" at issue generally involved a transaction where a customer would write a personal check at a First American Cash Advance store for a stated amount of $500 or less. The Knox Plaintiffs allege that employees at the First American Cash Advance store would instruct them to write the personal check even if they did not have money in their checking account to cover the check, and would promise that the check would not be presented until a date a short time in the future, typically 14 days. The customer was then provided with cash in the amount of the check, less a fee, which the Knox Plaintiffs allege resulted in a loan at annual percentage rates of over 300%. In the Complaint in the Knox Case, the Knox Plaintiffs note that the North Carolina law authorizing payday lending expired on August 31, 2001, and after that time, payday lenders, including First American Cash Advance, continued to do business but did so by purporting to act as "agents" for out-of-state banks.

_____

[2] In the <u>Knox</u> Complaint, Respondents allege violations of the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164, *et seq.*, the North Carolina Check Cashing Statute, N.C. Gen. Stat. §§ 53-276 and 53-283, the North Carolina Unfair Trade Practices Statute, N.C. Gen. Stat. § 75-1.1, North Carolina public policy as expressed in N.C. Gen. Stat. § 14-107, North Carolina Usury Law, N.C. Gen. Stat. § 24-1.1, and the North Carolina Loan Broker Statutes, N.C. Gen. Stat. § 66-106, *et seq.*

3

The Knox Complaint was brought against various entities that were not banks and that did business as "First American Cash Advance," as well as other affiliated companies. In the Knox Complaint, the Knox Plaintiffs specifically note that they are not asserting any claims under federal law and are not asserting any claims against a bank; instead, the Knox Plaintiffs essentially alleged that the First American Cash Advance entities were either the "true lenders" on the payday loans and failed to comply with applicable North Carolina lending laws and violated North Carolina usury laws, or were not the true lenders and were engaging in unfair and deceptive trade practices, illegal efforts to evade state law, and activities as a "loan broker" without complying with applicable state law.

The Defendants in the Knox Case attempted to remove that case to federal court in the Eastern District of North Carolina, on the jurisdictional grounds that the Knox Plaintiffs' state-law claims were completely preempted by federal law. See Knox v. First Southern Cash Advance, No. 7:05CV43 (E.D.N.C. 2005) (remanded May 19, 2005). The Knox Plaintiffs moved to remand the case to state court. Senior United States District Judge James C. Fox ultimately rejected the Knox Defendants' alleged basis for federal jurisdiction and remanded the case back to state court, holding that there was no basis for subject matter jurisdiction in the Knox Case because its well-pleaded complaint contained only state-law claims, and none of those claims were preempted by any federal banking law. (Remand Order dated May 19, 2005, pp. 3-4.) [3] Therefore, the Knox Case was remanded back to state court, and the state court

---

[3] In granting Respondents' Motion to Remand, Judge Fox did not consider, due to a docketing error, the Knox Defendants' opposition brief opposing the Motion to Remand. Based on this omission, the Knox Defendants moved for reconsideration. However, Judge Fox denied this motion because his entry of a remand order divested that court of all jurisdiction.

proceedings continued.

Having thus lost the opportunity to pursue the Knox Case directly in federal court, the Defendants in the Knox Case also filed the present case in this Court pursuant to the Federal Arbitration Act, contending that the documents that Respondents executed in conjunction with the payday loans at issue in the Knox Case require that all disputes with respect to those loans be individually arbitrated. The Knox Defendants that filed the Petition to Compel Arbitration in the present case are the "First American Cash Petitioners," all of whom are various non-bank entities that are named as defendants in the Knox Case. However, as noted above, the Petition to Compel Arbitration in the present case was also brought by Community State Bank ("CSB"), which is a federally insured, state-chartered bank located in South Dakota. The Knox Complaint did not name CSB as a defendant, and CSB has not sought to intervene in the Knox Case. Thus, CSB is not a party to the Knox Case. Although the Knox Case involves only state law claims against non-bank entities, Petitioners nevertheless contend that this Court has jurisdiction to compel arbitration of this dispute because CSB is a federally insured, state-chartered bank that is the "real party in interest" in the underlying dispute in the Knox Case, resulting in what CSB contends is a federal question based on the complete preemption of the dispute by the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, which governs usury claims asserted against state-chartered banks like CSB. Petitioners contend that the "crux" of the claims in the Knox Case is an alleged violation of North Carolina Consumer Finance and usury laws based on alleged excessive fees and interest, and that the claims are really claims against the lender that charged the interest, which Petitioners contend was CSB. Petitioners request that the Court

5

direct that individual arbitration proceed between Respondents and Petitioners in order to resolve the disputes raised in the Knox Case, that Respondents be restrained from any further state or federal action while the parties engage in arbitration, that the Knox Case be stayed, and that this Court retain jurisdiction of the matter.

The underlying state court proceeding in the Knox Case was stayed by the state court for an extended period of time in light of ongoing state proceedings in other "payday lending" cases that would have rendered the Knox Case moot, and this Court likewise stayed the present case on the same basis. The stay in the underlying state proceedings was subsequently lifted, and the Petitioners filed an Amended Petition in the present case, again seeking to compel arbitration and stay the underlying state proceedings in the Knox Case. Respondents filed a Motion to Dismiss the Amended Petition, and the parties have filed supplemental status reports regarding the state court proceedings. On January 23, 2012, the state court entered an Order in the Knox Case allowing that case to proceed in state court. As such, the Amended Petition and Motion to Dismiss in this case are ripe for disposition by this Court. In the present Motion to Dismiss, Respondents contend that this Court lacks subject matter jurisdiction because the underlying dispute in the Knox Case involves only state law claims against non-bank parties not raising any federal question jurisdiction. Respondents also contend that principles of res judicata and issue preclusion apply to this jurisdictional determination because this issue was already addressed by the Eastern District of North Carolina's remand order in the Knox Case. Finally, as to CSB, Respondents contend that there is no dispute between Respondents and CSB since Respondents have waived any possible claims against CSB. The Court will consider these contentions and

6

the various issues raised by the parties in light of the legal standards set out below.

II.    LEGAL STANDARDS

Because this case was brought pursuant to the Federal Arbitration Act ("FAA"), the Court begins with the legal standards set out in the FAA. The FAA provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The provisions of the FAA may be enforced in state or federal court, and "[t]he 'body of federal substantive law' generated by elaboration of FAA § 2 is equally binding on state and federal courts." Vaden v. Discover Bank, 556 U.S. 49, 59, 129 S. Ct. 1262, 1271, 173 L. Ed. 2d 206 (2009). For suits brought in federal court, Section 4 of the FAA provides that a petition to compel arbitration pursuant to an arbitration agreement may be brought in "any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Thus, the FAA ""bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Vaden v. Discover Bank, 556 U.S. at 59, 129 S. Ct. at 1271 (internal quotation and alteration omitted). In determining whether an independent basis exists for federal jurisdiction, "[a] federal court may 'look through' a § 4 petition and order arbitration if, save for the arbitration agreement, the court would have jurisdiction over the substantive controversy between the parties." Vaden v. Discover Bank, 556 U.S. at 53, 129 S. Ct. at 1268 (internal quotations and alterations omitted).

The independent jurisdictional basis relied upon by the Petitioners in this case is 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the

7

Constitution, laws, or treaties of the United States." In determining such "federal question" jurisdiction, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987). This "rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Indeed, the Supreme Court has explained that "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809, n. 6, 106 S. Ct. 3229, 3233, n. 6, 92 L. Ed. 2d 650 (1986) (citing The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S. Ct. 410, 411, 57 L. Ed. 716 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon.")).

However, a corollary to the well-pleaded complaint rule is the doctrine of complete preemption, which "recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law." Nordan v. Blackwater Sec. Consulting, LLC (In re Blackwater Sec. Consulting, LLC), 460 F.3d 576, 584 (4th Cir. 2006). Under this "complete preemption" doctrine, "[a] complaint purporting to rest on state law . . . can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal." Vaden v. Discover Bank, 556 U.S. at 61, 129 S. Ct. at 1273; see also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 123 S. Ct. 2058, 2062-63, 156 L. Ed. 2d 1 (2003) (holding that "complete preemption" applies when "[t]he federal statutes at issue provided the exclusive cause

8

of action for the claims asserted" and that "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law").[4]

In the present case, the "federal question" that is alleged by Petitioners to provide an independent basis for federal jurisdiction is Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, which Petitioners contend completely preempts any state law usury claims against out-of-state banks such as CSB. The issue of complete preemption by Section 27 of the FDIA has not been directly addressed by the Supreme Court, but has been addressed by the Fourth Circuit in decisions that ultimately culminated in the Supreme Court's decision in Vaden v. Discover Bank, 556 U.S. 49, 129 S. Ct. 1262 (2009). See Discover Bank v. Vaden, 396 F.3d 366 (4th Cir. 2005) ("Vaden I") and Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007) ("Vaden II"), rev'd, Vaden v. Discover Bank, 556 U.S. 49, 129 S. Ct. 1262 (2009). The Vaden case arose after a Discover Bank subsidiary known as Discover Financial Services filed suit in state court on behalf of Discover Bank to collect a debt owed by a customer to Discover Bank. The customer filed counterclaims under state law challenging the interest and fees charged. Discover Bank thereafter filed a separate case in federal court against the customer

---

[4] The Fourth Circuit has noted that this jurisdictional doctrine of "complete preemption" is distinct from a substantive defense of preemption, in that "complete preemption is a 'jurisdictional doctrine,' while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim." Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005); see also In re Blackwater Security Consulting, LLC, 460 F.3d at 584 ("The doctrine of complete preemption, therefore, concerns itself with the uniquely jurisdictional inquiry into whether a purportedly state-law claim actually arises under federal law so as to create federal jurisdiction over that claim.").
.

9

pursuant to the Federal Arbitration Act, contending that the customer's counterclaims were actually claims against Discover Bank (the entity that charged the fees and interest) rather than the subsidiary, and that the claims against Discover Bank were completely preempted by the FDIA, thus creating federal jurisdiction over Discover Bank's petition to compel arbitration under the FAA.

In Vaden I, the Fourth Circuit adopted an FAA jurisdictional analysis similar to that subsequently adopted by the Supreme Court, "looking through" the FAA petition to the underlying dispute between the parties, and holding that a federal district court would have jurisdiction over "a § 4 petition to compel arbitration if, but for the arbitration agreement, subject matter jurisdiction over the case would otherwise exist by virtue of a properly invoked federal question in the underlying dispute." Vaden I, 396 F.3d 366, 373 (4th Cir. 2005). The case was therefore remanded to the district court to determine whether there was such a "properly invoked federal question in the underlying dispute."

In the subsequent appeal in Vaden II, the Fourth Circuit determined that claims for violation of state usury laws against a state-chartered, federally insured bank would be completely preempted by the FDIA. Vaden II, 489 F.3d at 604-06. In reaching this conclusion, the Fourth Circuit analogized Section 27 of the FDIA to the National Bank Act, and concluded that just as the National Bank Act completely preempts state-court usury claims against a national bank, "the FDIA completely preempts state-court usury claims against a state-chartered, federally insured bank." Vaden II, 489 F.3d at 608; see also Beneficial Nat'l Bank v. Anderson, 123 S. Ct. at 2064 (holding that the National Bank Act completely preempted any cause of action for usury

10

against a national bank, so that there was "no such thing as a state-law claim of usury against a national bank"). The Fourth Circuit further concluded that in the <u>Vaden</u> case, the state law counterclaims were "really directed" at Discover Bank rather than its subsidiary, because the bank was the lender and was the "real party in interest." <u>Vaden II</u>, 489 F.3d at 601. Therefore, the Fourth Circuit in <u>Vaden II</u> concluded that federal question jurisdiction existed.

However, the Supreme Court granted certiorari and vacated the Fourth Circuit's decision in <u>Vaden II</u>. In its decision, the Supreme Court did not resolve the question of whether complete preemption applied under Section 27 of the FDIA, or whether a "real party in interest" analysis should be used to determine the scope of preemption. <u>See</u> <u>Vaden v. Discover Bank</u>, 556 U.S. at 70, 129 S. Ct. at 1278 (noting that the Court "has not yet resolved" the question of complete preemption under Section 27 of the FDIA). Instead, the Supreme Court concluded that in determining the existence of federal jurisdiction, courts must look through the arbitration agreement to "the entire, actual 'controversy between the parties,' as they have framed it," and even when complete preemption applies, the "well-pleaded complaint" rule requires reference only to the complaint in the underlying dispute, not the counterclaims. <u>Vaden v. Discover Bank</u>, 556 U.S. at 66, 129 S. Ct. at 1275. In applying that rule, the Supreme Court noted that the complaint in the underlying dispute in the <u>Vaden</u> case was the complaint by Discover Financial Services under state law for collection of a debt. Therefore, the Supreme Court concluded that the federal courts did not have subject matter jurisdiction over the petition to compel arbitration in that case. In reaching that conclusion, the Supreme Court noted that even when complete preemption potentially applies, "[t]he text of § 4 instructs federal courts to determine whether

11

they would have jurisdiction over 'a suit arising out of the controversy between the parties'; it does not give § 4 petitioners license to recharacterize an existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid in compelling arbitration," and "§ 4 does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' controversy." Vaden v. Discover Bank, 556 U.S. at 68, 129 S. Ct. at 1276-77.

The Fourth Circuit has not provided further guidance or application of these rules. However, the Eleventh Circuit has recently undertaken an extensive analysis of the Supreme Court's Vaden decision in a case that raises issues similar to those raised in the present case. See Community State Bank v. Strong, 651 F.3d 1241 (11th Cir. 2011). In Strong, the Eleventh Circuit applied the Supreme Court's Vaden decision in a case involving a petition to compel arbitration of a controversy involving "payday lenders." The Eleventh Circuit concluded that in "looking through" the arbitration petition to the controversy between the parties, the court would consider separately the parties whose controversy was the subject of an underlying state court suit and the parties who were not part of the state court suit. In Strong, as in the present case, the underlying state court suit was brought against non-bank entities. As in the present case, a state-chartered bank[5] and the non-bank entities together filed a petition to compel arbitration. The Eleventh Circuit concluded that in determining the existence of federal jurisdiction as to the non-bank entities, the court would "look through" the petition to the actual controversy in the underlying state court suit. See Strong, 651 F.3d at 1253 (holding that under

_____

[5] As in the present case, the out-of-state bank in the Strong case was Community State Bank.

12

Vaden, "when the parties' controversy has already been 'embodied' in pending litigation . . . , federal jurisdiction over the subsequent FAA petition must be assessed from the face of the preexisting complaint" and is limited to the controversy "as framed by the parties"). However, with respect to the Bank, since the Bank was not a party to that underlying state court suit, the court in Strong would "look through" to the controversy that could exist between the Bank and the respondents. See Strong, 651 F.3d at 1254-56 (holding that "no preexisting litigation has yet defined the contours of the controversy between Strong and the Bank" and that in determining federal jurisdiction as to the Bank, the court would "look through" the petition to "the specific controversy" between Strong and the Bank). After adopting this approach, the Eleventh Circuit concluded that the petition as asserted by the non-bank petitioners was barred by the doctrine of *res judicata*, based on developments in the underlying state court suit, and therefore the petition was dismissed as to the non-bank petitioners. However, the Eleventh Circuit concluded that federal jurisdiction would exist as to the claim between Strong and the Bank, based on a hypothetical potential federal RICO claim against the Bank under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-1962.

Based on these various decisions, several relevant legal principles emerge. First, in determining federal subject matter jurisdiction over an FAA arbitration petition, the Court must "look through" the arbitration petition to determine if the Court would have federal subject matter jurisdiction over the parties' underlying dispute. Where that underlying dispute is the subject of a lawsuit, that lawsuit defines the dispute, and the Court must "look through" to the well-pleaded complaint in that lawsuit. When a party to the arbitration petition is not a party to

13

the underlying lawsuit, following the Eleventh Circuit's guidance in <u>Strong</u>, the Court should consider that party separately and "look through" the arbitration petition to determine the actual controversy between that party and the respondents. Finally, in considering whether federal question jurisdiction exists over the underlying dispute, the Court notes the Supreme Court has not resolved the question of whether the FDIA should be construed to provide "complete preemption," but based on the Fourth Circuit's prior determination in <u>Vaden II</u>, this Court will assume that complete preemption would apply under the FDIA, thus providing federal question jurisdiction over state law usury claims asserted against state-chartered, federally insured banks.[6]

Based on these legal principles, the Court will turn to a consideration of the Motions to Dismiss in the present case. Following the guidance of the Eleventh Circuit in <u>Strong</u>, the Court will separately consider the First American Cash Petitioners, who are parties to the underlying Knox Case, and Community State Bank, which is not a party to the underlying state litigation.

---

[6] As noted above, in <u>Vaden II</u>, the Fourth Circuit concluded that the FDIA "completely preempts" state law usury claims against a state-chartered, federally insured bank. However, the Fourth Circuit's decision in <u>Vaden II</u> was vacated when the Supreme Court granted ceriorari, and the Supreme Court did not reach the "complete preemption" issue in its consideration in <u>Vaden</u>, as discussed above. Other courts have subsequently concluded that complete preemption would not apply to the FDIA. <u>See</u> <u>Thomas v. US Bank Nat'l Ass'n</u>, 575 F.3d 794, 797 (8th Cir. 2009) ("Complete preemption does not exist here because the language of [the FDIA] unlike the NBA, does not reflect Congress' intent to provide the exclusive cause of action for a usury claim against a federally-insured, state-chartered bank."); <u>Griner v. Synovus Bank</u>, __ F. Supp. 2d __, 2011 WL 3581429 (N.D. Ga. 2011) (finding that the FDIA "does not completely preempt state-law usury claims against federally insured, state-chartered banks and does not establish the federal question jurisdiction necessary for removal of this matter to federal court"). Thus, the question of whether the FDIA completely preempts usury claims against state-chartered banks, as a jurisdictional matter, is not resolved, although the Fourth Circuit's vacated opinion in <u>Vaden II</u> provides some indication that the Fourth Circuit would find complete preemption under the FDIA with respect to any state law claim for usury against a state-chartered, federally insured bank.

14

In undertaking this separate analysis, the Court will begin with the First American Cash Petitioners, as discussed below in Section III, and will then turn to Community State Bank, as discussed below in Section IV.

## III. PETITION TO ARBITRATE AS ASSERTED BY FIRST AMERICAN CASH PETITIONERS

With respect to the First American Cash Petitioners, Respondents contend in their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) that the Petition to Compel Arbitration should be dismissed for lack of subject matter jurisdiction because, in essence, the claims in the Knox Complaint that Petitioners seek to arbitrate are purely questions of state law against non-bank entities. In addition, Respondents contend that this jurisdictional issue was resolved against the First American Cash Petitioners when they, as Defendants in the Knox Case, attempted to remove the Knox Complaint to federal court in the Eastern District of North Carolina. Therefore, Respondents contend that issue preclusion would prevent the First American Cash Petitioners from challenging this prior determination made in the Knox Case by the Eastern District of North Carolina.

As noted above, in assessing federal subject matter jurisdiction under the FAA, the Court must "look through" to the underlying controversy between the parties, and where the controversy is defined by a lawsuit, the Court must consider the suit as filed, and "hypothesizing about the case that might have been brought does not provide a basis for federal-court jurisdiction." Vaden v. Discover Bank, 556 U.S. at 68, 129 S. Ct. at 1277. Therefore, as to the First American Cash Petitioners, all of whom are Defendants in the underlying Knox Case, the Court looks to the Knox Case as the "controversy between the parties." The complaint in the

15

Knox Case on its face raises only state law claims against the First American Cash Petitioners, and does not raise any claims against a bank. However, as noted above, Petitioners contend that Respondents actually challenge the legality of interest rates on loans made by Community State Bank as an out-of-state bank that Petitioners contend was "artfully" omitted from the Knox Complaint.

In considering these contentions, the Court agrees that as to the First American Cash Petitioners, these issues were resolved when the First American Cash Petitioners, as Defendants in the Knox Case, unsuccessfully attempted to remove the Knox Case to federal court on the same basis. In the Remand Order in the Knox Case from the Eastern District of North Carolina, Judge Fox held that:

> In this case, Defendants contend that Plaintiffs' claims are completely preempted by the NBA and the FDIA because out-of-state banks were the named lenders in the loans at issue. This court has previously rejected the identical argument as it applies to national banks and the NBA. *See North Carolina ex rel Cooper v. ACE Cash Express, Inc.*, No. 5:02-CV-69-F(3) (E.D.N.C. May 14, 2002). In *ACE Cash Express*, this court concluded that an unnamed party's status as a national bank could not provide a basis for federal question jurisdiction over state claims asserted against the named defendant, a payday lender. *Id.* at p. 2-4. Defendants have not cited, nor has the court found, any persuasive authority which would cause the court to reach a different conclusion. . . . . Defendants' arguments with regard to complete preemption and the FDIA fail for the same reasons expressed by this court in *ACE Cash Express*: the status of an unnamed party, whether as a national bank or a state-chartered bank, does not bring the named defendants into the coverage of the NBA or FDIA. *See ACE Cash Express*, at p. 2-4. . . . . Based on the facts now presented, as well as the reasoning of the aforementioned district courts, the court finds that status of the unnamed parties, First National Bank in Brookings and Community State Bank, as a national bank and a state-chartered bank, respectively, does not bring Defendants within the coverage of either the NBA [or] the FDIA. Consequently, Defendants' arguments that Plaintiffs' claims are completely preempted by the NBA and FDIA fail.

Knox v. First Southern Cash Advance, No. 7:05CV43 (E.D.N.C. May 19, 2005).

16

In considering the extent to which this Order in the Knox Case implicates the *res judicata* concept of issue preclusion, the Court notes that "[a] party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that 'the issue sought to be precluded is identical to one previously litigated' ('element one'); (2) that the issue was actually determined in the prior proceeding ('element two'); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' ('element three'); (4) that the prior judgment is final and valid ('element four'); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' ('element five')." Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006). The Supreme Court has explained that issue preclusion serves an important and necessary purpose because "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153-54, 99 S. Ct. 970, 973-74, 59 L. Ed. 2d 210 (1979).

Petitioners do not contest, and the Court in fact finds, that the first four elements of issue preclusion are satisfied. Indeed, Judge Fox's Remand Order, in assessing whether the Knox Case was properly removed to federal court, addressed and actually determined, in the negative, the same jurisdictional question presently raised before this Court by Respondents' Motions to Dismiss; namely, whether the doctrine of complete preemption converts the state-law claims in the Knox Case into issues of federal law. With respect to the issue preclusion requirement that

17

the prior proceeding must be final and valid, the parties do not dispute that the Order was final and valid, and the Court notes that a dismissal for lack of jurisdiction, although not a ruling on the merits, may nevertheless have preclusive effect on that same jurisdictional question in a subsequent dispute. See Goldsmith v. Baltimore, 987 F.2d 1064, 1069 (4th Cir. 1993) (explaining that "a jurisdictional dismissal that does not constitute a judgment on the merits . . . still operates to bar relitigation of issues actually decided by that former judgment").[7]

In response to the Respondents' Motion to Dismiss based on issue preclusion, the Petitioners raise two contentions. First, the Petitioners contend that issue preclusion would not apply to Community State Bank because Community State Bank was not a party to the removal in the Knox Case and therefore did not have a full and fair opportunity to litigate. However, the Court is not applying issue preclusion as to Community State Bank; instead, the Court is considering now only the First American Cash Petitioners, all of whom were parties to the Knox case and had a full and fair opportunity to be heard on this issue.[8]   Therefore, the Court

_____

[7] The Court notes that the remand order would not prevent reconsideration of any of these issues by the state court following the remand, and "it is only the forum designation that is conclusive." See Kircher v. Putnam Funds Trust, 547 U.S. 633, 647, 126 S. Ct. 2145, 2157, 165 L. Ed. 2d 92 (2006); see also Nutter v. Monongahela Power Co., 4 F.3d 319, 322 (4th Cir. 1993). In Nutter, the Fourth Circuit held that a federal "district court's jurisdictional findings incident to remand . . . [do not] preclude relitigation of the same issues in state court," and thus, the district court's finding in that case regarding complete preemption could be re-litigated in the state forum. Nutter, 4 F.3d at 322. Thus, the "complete preemption" jurisdictional determination by one federal court should be given preclusive effect in another federal court where the same jurisdictional issue is raised, but the state court is not bound by that jurisdictional determination in considering whether a substantive defense of preemption would apply.

[8] In briefing related to prior Motions, the Petitioners asserted that Judge Fox failed to consider the Knox Defendants' brief in response to Respondents' motion to remand before issuing his Remand Order, due to a delay in docketing by the clerk. However, the Knox

18

concludes that the Eastern District of North Carolina's Remand Order is entitled to preclusive effect against the First American Cash Petitioners.

The Petitioners also contend that the Remand Order should not be given preclusive effect because the law on which the Remand Order was based has changed. In this regard, the Fourth Circuit has noted that "the doctrine of collateral estoppel does not apply to a legal ruling if there has been a 'major' change in the governing law since the prior adjudication that 'could render [the] previous determination inconsistent with prevailing doctrine.'" Collins, 468 F.3d at 218 (quoting Montana, 440 U.S. at 161, 99 S. Ct. at 977). In considering this contention in the present case, the Court has reviewed the cases presented by the parties, and concludes that the Remand Order still rests on a sound legal basis. Specifically, the Court finds that the weight of authority would support the conclusion that state law claims brought only against non-bank entities are not subject to complete preemption, even if the state law claims would have been subject to complete preemption if they had been brought against a national or state-chartered bank. See, e.g., Flowers v. EZPawn Oklahoma, Inc., 307 F. Supp. 2d 1191 (N.D. Okla. 2004) (finding no complete preemption by the FDIA where underlying suit challenging "payday loans"

---

Defendants fully litigated the complete preemption issue in their Notice of Removal, which presented their own statement of the facts, identified and explained the doctrine of complete preemption, and argued based upon essentially the same evidence and case authority contained in the Knox Defendants' overlooked Response Brief that the claims in the Knox Complaint were preempted because Community State Bank was the "true lender" of the loans at issue. Therefore, the Court finds that the Notice of Removal adequately raised the contention that Community State Bank was the "true lender," and the Remand Order specifically dealt with this contention, as set out above. Therefore, the First American Cash Petitioners had a full and fair opportunity to litigate this issue in the Eastern District of North Carolina on their removal in the Knox Case.

was not asserted against the state-chartered bank); <u>Spitzer v. County Bank of Rehoboth Beach</u>, 1:03CV1320 (N.D.N.Y. May 25, 2004) (finding no complete preemption by the FDIA where state law usury claims were asserted only against separate entities, not against the state-chartered bank); <u>Brown v. ACE Cash Express, Inc.</u>, 01CV2674 (D. Md. Nov. 14, 2001) (finding no complete preemption by the National Bank Act since claims against ACE Express Inc. were not claims against a national bank, and no national bank was named as a party in the state court suit); <u>Long v. ACE Cash Express, Inc.</u>, 3:00CV1306, 2001 WL 34106904 (M.D. Fla. 2001) (finding no complete preemption by the National Bank Act where a state court "payday lending" plaintiff sued ACE Cash Express under state law and did not name a national bank as a defendant, and noting that any question about whether state law would support a claim against ACE in these circumstances was for the state court); <u>Colorado ex rel. Salazar v. ACE Cash Express, Inc.</u>, 188 F. Supp. 2d 1282 (D. Colo. 2002) (concluding that a state law suit against a national bank's agent, which was a separate entity, did not give rise to complete preemption under the National Bank Act, since the state suit did not allege any claims against a national bank); <u>Cooper v. ACE Cash Express, Inc.</u>, 4:02CV69 (E.D.N.C. 2002) (finding no federal subject matter jurisdiction even if the national bank was the named lender, where the state court suit was asserted only against separate, non-bank entities, and was not brought against a national bank); <u>see also</u> <u>Green v. H & R Block, Inc.</u>, 981 F. Supp. 951, 955 (D. Md. 1997) (finding no federal jurisdiction over state law claims asserted against non-banks, and noting that "[t]here is no support for the proposition that an entity that acts in concert with, or is in privity with, a national bank is entitled

to remove state claims to federal court under the NBA").[9]

In the present case, Community State Bank and the First American Cash Petitioners are separate entities, and under the cases cited above, the claims in the underlying Knox Case involving state law claims asserted only against the First American Cash Petitioners would not be subject to federal jurisdiction. The First American Cash Petitioners nevertheless contend that the Fourth Circuit's decision in Vaden II changed this conclusion and required that the jurisdictional analysis be based on a factual determination of which entity was in fact the "true lender." However, the decision in Vaden II was vacated when the Supreme Court granted certiorari, and the Supreme Court did not address this issue in its opinion.[10] Moreover, even if Vaden II were still in place, it would not change the conclusion set out above. In this regard,

---

[9] In contrast, complete preemption under the National Bank Act would apply to state law claims where a national bank was *named as a party* in the underlying suit. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003) (providing for complete preemption of state law usury claims against a national bank); Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 873 n.3 (11th Cir. 2005) (finding complete preemption over state law usury claims where the borrower "expressly named both First American and FNB [the national bank] as Defendants and charged them both with usury" and "[b]ecause [the borrower] charged a national bank with violating Georgia usury laws, removal was proper"); see also Krispin v. May Dep't Stores Co., 218 F.3d 919 (8th Cir. 2000) (finding complete preemption over usury claims where all accounts had been completely assigned to a national bank and all claims were based on actions taken by the national bank after the assignment). However, these cases would not support Petitioners' contention that complete preemption extends to provide federal jurisdiction over state law usury claims against separate, non-bank entities where no bank has been named as a party in the underlying suit.

[10] To the extent it was addressed at all by the Supreme Court, the Supreme Court expressed respect for the choice of claims actually asserted by the plaintiff in the underlying suit, noting that the case "may well have been different had Vaden initiated an FDIA claim," but "Vaden did not invoke the FDIA. Indeed, she framed her counterclaims under state law and clearly preferred the Maryland forum. The dissent's hypothesizing about the case that might have been brought does not provide a basis for federal-court jurisdiction." Vaden v. Discover Bank, 556 U.S. at 69 n.17, 129 S. Ct. at 1277 n.17.

the Court notes that the Fourth Circuit in <u>Vaden II</u> held that under Federal Rule of Civil Procedure 17, "an action must be brought by the party that has the right to enforce the claim and has a significant interest in the litigation" and in determining the "real" party in interest, "it may be necessary to look beyond the pleadings to the facts of the dispute." <u>Vaden II</u>, 489 F.3d at 601. However, <u>Vaden II</u> required the court to determine whether the underlying claims were properly asserted against a bank or its subsidiary. This is the type of analysis often involved in determining which entity is the "proper party" to a suit. In reaching this determination, the Fourth Circuit specifically distinguished <u>Goleta Nat'l Bank v. Lingerfelt</u>, 211 F. Supp. 2d 711, 718-19 (E.D.N.C. 2002) and <u>Flowers v. EZPawn Oklahoma, Inc.</u>, 307 F. Supp. 2d 1191, 1196 (N.D. Okla. 2004). Thus, the Fourth Circuit's decision in <u>Vaden II</u> was directed more narrowly to determining the "proper party" or the "real party in interest" under Rule 17 between a parent and subsidiary corporation, not necessarily requiring a substitution of separate, unrelated parties when the plaintiff has made a choice to sue one party over another.[11]

---

[11] To the extent that the First American Cash Petitioners contend that the Knox Plaintiffs "strategically" failed to name Community State Bank as a party in an effort to defeat federal jurisdiction, similar contentions are dealt with under Rule 17 in diversity cases under the doctrine of "fraudulent joinder." This doctrine is based on the well-settled requirement that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy" and "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 460-61, 100 S. Ct. 1779, 1781-82, 64 L. Ed. 2d 425 (1980) (citations omitted). "To show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." <u>Hartley v. CSX Transp.</u>, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotations omitted). However, in the present case, in light of the nature of the claims asserted against the Knox Defendants in the Knox Case, of which Community State Bank was not a party, there is no basis to conclude that the Knox Defendants are simply "nominal parties" or are not "real parties in

In the present case, the Knox Plaintiffs have asserted state law claims against the First American Cash entities separate from any potential unasserted claims against Community State Bank, and have specifically asserted alternative claims depending upon whether the First American Cash entities are determined to be the "true lenders" or not. For example, the Knox Complaint alleges that, even if the Knox Defendants are without any direct financial stake in the loans they service, that the Knox Defendants have violated the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164, *et seq.* (2007) ("CFA"). The Knox Complaint also alleges that the Knox Defendants, even if they are not the "true lenders," have violated the North Carolina Broker Statute, N.C. Gen. Stat. § 66-106 *et seq.* (2007), by failing to provide specified disclosure statements to prospective borrowers, obtain a bond or establish a trust account, and file certain material with the North Carolina Secretary of State. Finally, the Knox Complaint brings claims against the Knox Defendants under North Carolina public policy regarding worthless checks, contending that the Knox Defendants solicited the cashing of worthless checks or aided and abetted Community State Bank in doing so. N.C. Gen. Stat. § 14-107(b) (2007). Thus, the Knox Plaintiffs have asserted both usury claims and potentially valid alternative claims against the Non-Bank Petitioners, and have chosen not to assert any claims against Community State Bank. Cf. West Virginia v. Cashcall, Inc., 605 F. Supp. 2d 781, 787

---

interest" requiring the Court to look past the named parties in determining jurisdiction, nor is there any evidence of fraud in the Knox Plaintiffs' pleading. The Court also notes that Rules 19 and 24 could potentially have been invoked in the Knox Case to address questions of which parties may or should have been joined in that action. However, in the Knox Case, the Knox Defendants did not contend that the Knox Plaintiffs had failed to join CSB as a necessary party under Rule 19, nor did CSB attempt to intervene in the Knox Case under Rule 24.

(S.D. W. Va. 2009) (finding that claims for alleged violations of state usury laws asserted against a separate entity, other than the bank, were not subject to federal jurisdiction under the complete preemption doctrine because the claims were only asserted against Cashcall, a non-bank entity that was a completely separate from the bank, and "[i]f CashCall is found to be a de facto lender, then CashCall may be liable under West Virginia usury laws. A contrary determination that CashCall is not a real lender will not result in the Bank's liability or regulation under state laws, but will merely relieve CashCall of liability under those laws").

Therefore, the Court finds that the Knox Defendants are the real party in interest in the Knox Case because the Knox Plaintiffs chose to bring claims against only the non-bank entities and have asserted potential claims regardless of whether those entities are the true lenders or only the servicers of the loans at issue. As a result, the state-law claims in the Knox Case are simply state law claims against non-bank entities, and are not completely preempted by federal law. Therefore, the Court concludes that the Remand Order in the Knox Case continues to rest on a sound legal basis, and is entitled to preclusive effect. Thus, because this jurisdictional issue has already been determined by the Eastern District of North Carolina with respect to the First American Cash Petitioners, the Court concludes that the Petition to Compel Arbitration asserted by the First American Cash Petitioners must be dismissed.[12] Having concluded that the Petition

---

[12] Of course, even if no basis for federal jurisdiction exists, the provisions of the FAA may be enforced in state court. See, e.g., KPMG LLP v. Cocchi, 132 S. Ct. 23, 24, 181 L. Ed. 2d 323 (2011) ("Agreements to arbitrate that fall within the scope and coverage of the Federal Arbitration Act (Act), 9 U.S.C. § 1 et seq., must be enforced in state and federal courts. State courts, then, 'have a prominent role to play as enforcers of agreements to arbitrate.'" (quoting Vaden v. Discover Bank, 556 U.S. at 59, 129 S. Ct. at 1272)). To the extent that the state court in the Knox Case has now denied the Knox Defendants' Motions to Compel Arbitration, any

Case 1:05-cv-00226-JAB-LPA   Document 67   Filed 02/03/12   Page 24 of 29

to Compel Arbitration will be dismissed to the extent that it has been brought by the First American Cash Petitioners, the Court now turns to a consideration of the Petition to Compel Arbitration to the extent that it is brought by Community State Bank.

## IV.    PETITION TO COMPEL ARBITRATION AS ASSERTED BY COMMUNITY STATE BANK

Community State Bank has joined in the Petition to Compel Arbitration, contending that it was a party to the arbitration agreement entered into by Respondents during the loan process, and that Respondents have refused to arbitrate any dispute they may have with the Bank related to the loans.  As noted above, under the FAA, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition for an order compelling arbitration.  9 U.S.C. § 4.  Community State Bank contends that it is such a "party aggrieved."  Cf. Republic Bank & Trust Co. v. Kucan, 245 Fed. Appx. 308, 310-11 (4th Cir. 2007) (noting that Republic Bank and the borrowers were "parties to contracts that required any claims or disputes to be resolved through arbitration" and where the parties refused to comply with that obligation, "Republic Bank, as a party to the contract, has the right to insist on compliance with that contractual term").  Therefore, to the extent that Respondents have any controversy or dispute with Community State Bank related to the loan process or any other issue covered by the arbitration agreement, the Bank would be a "party aggrieved" who could petition

challenge to that determination must be by appeal in the state proceedings.

for arbitration under the FAA.

Community State Bank further contends that this Court has subject matter jurisdiction over its petition for arbitration because the underlying controversy between the parties challenges "the legality of the interest charges on loans made by [Community State Bank]," as a federally insured, state-chartered bank. As discussed above, to determine the existence of federal subject matter jurisdiction, the Court must look through the arbitration agreement to "the entire, actual 'controversy between the parties'" Vaden v. Discover Bank, 556 U.S. at 66, 129 S. Ct. at 1275. In this regard, Section 4 does not require a party to actually file suit regarding the underlying controversy. Therefore, where there is no underlying lawsuit that defines the controversy between the parties, the Court must consider whether federal jurisdiction would exist if an actual suit arose out of the controversy. Moreover, as discussed above, the Court assumes that the Fourth Circuit would hold, as it did in Vaden II, that the FDIA completely preempts usury claims asserted against state-chartered, federally insured banks. Therefore, to the extent that there is an actual controversy or dispute between Respondents and Community State Bank, a Petition to compel arbitration of those claims would be within this Court's federal jurisdiction as claims against an out-of-state, federally insured bank that are completely preempted by the FDIA.

However, in evaluating the nature of the potential underlying controversy in this case between Community State Bank and the Respondents, the Court notes that Community State Bank has failed to show the existence of any underlying controversy between Respondents and CSB. According to the plain text of the FAA, Petitioners must allege that Respondents refused

26

to arbitrate, as well as that an *underlying controversy* exists between the parties apart from the refusal to arbitrate. 9 U.S.C. § 4 (2007); <u>See</u> <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991) ("To state a claim to compel arbitration under the FAA, the plaintiff must allege . . . the existence of a dispute between the parties."); <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1110 (11th Cir. 2004) ("[I]f a party makes a motion to compel arbitration under 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in order for it to exercise its jurisdiction over that motion to compel."). In this case, Respondents have not sued Community State Bank, and the Knox Complaint names only non-bank entities as defendants and specifically disclaims any allegation that Community State Bank engaged in any illegal conduct. In fact, Respondents have now executed affidavits stipulating that they "unconditionally agree not to sue Community State Bank for any claim [they] have or may have in connection with any payday loan that has been made to or with me." (Respondents' Ex. to Mot. to Dismiss [Doc. #52] Ex. 14). Moreover, Community State Bank has ceased providing "payday loans" in North Carolina, and the statute of limitations has run on any potential claims that could have been asserted by other parties against Community State Bank raising any of the theories being litigated in the Knox Case. Finally, the Court notes that the agreements between Community State Bank and the First American Cash Petitioners establish that Community State Bank would not face any potential liability to the First American Cash Petitioners if the First American Cash Petitioners are ultimately found liable on any of the claims in the Knox Case; in fact, under the agreements presented in the record, it is the First American Cash Petitioners that are obligated to indemnify Community State Bank for any potential liability, and Community State Bank does not have any

27

indemnification obligation to the First American Cash Petitioners. (Amended Petition [Doc. #47], Ex. B). There is simply no remaining controversy between Respondents and Community State Bank, and as such, there is no controversy that is subject to arbitration under the FAA.[13] Therefore, the Petition to Compel Arbitration must also be dismissed as to Community State Bank.

V.    CONCLUSION

    For the separate reasons set forth above, the Court concludes that the Petition to Compel Arbitration should be dismissed as to both the First American Cash Petitioners and Community State Bank. Therefore, Respondents' Motion to Dismiss will be granted and this case will be dismissed.

    IT IS THEREFORE ORDERED that Respondents' Motion to Dismiss [Doc. #50] is GRANTED and this case is DISMISSED.

    A Judgment consistent with this Order and Memorandum Opinion will be entered contemporaneously herewith.

---

[13] To the extent that Community State Bank would nevertheless seek to force arbitration of the dispute between the Knox Plaintiffs and Knox Defendants, the Court agrees with Respondents that Community State Bank would not have standing to force arbitration of a dispute between unrelated third parties, where all potential claims against Community State Bank have been released with prejudice and there is no injury or potential injury to Community State Bank, as noted above. Cf. Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25-26 (1st Cir. 2000) ("Enabling a party who has been dismissed with prejudice from a suit and who faces no readily foreseeable jeopardy to compel arbitration would not advance this policy [favoring arbitration]. Perhaps more importantly, such a step would fly in the face of established standing doctrine. In the standing inquiry, a mere interest in a situation-no matter how deeply felt, or how important the issue-will not substitute for actual injury." (internal quotations omitted)).

28

This, the 3rd day of February, 2012.

United States District Judge